FILED

2016 Jan-15  PM 01:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| SAMMY EDWARD SIMPSON, II, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  4:13-cv-01450-SGC |
| | ) | |
| STATE OF ALABAMA DEPARTMENT OF | ) | |
| HUMAN RESOURCES, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

This employment discrimination case is before the undersigned on the motion to recuse filed by the plaintiff, Sammy Edward Simpson, II (Doc. 18), and the motion to dismiss filed by the defendants, the Alabama Department of Human Resources, DeKalb County DHR, Etowah County DHR, Jefferson County DHR, Marshall County DHR, St. Clair County DHR, Denise Raines (the director of DeKalb County DHR), Jane Bonds (a DeKalb County DHR supervisor), and Cherri Pilkington (the director of St. Clair County DHR) (Doc. 7).   In their motion to dismiss, the defendants argue Simpson fails to plead any federal cause of action against them sufficiently, they are entitled to Eleventh Amendment immunity with respect to certain of Simpson's claims, and certain of Simpson's claims should be dismissed as "duplicative."   (*Id.*).  The parties have briefed the motion to dismiss fully.   (Docs. 7 & 8).   For the reasons discussed below, the undersigned recommends Simpson's motion to recuse be denied.   The undersigned further recommends the defendants' motion to dismiss be denied in part and granted in part, pursuant to Rules 12(b)(1) and (6) of the *Federal Rules of Civil Procedure*.

---

[1] This action was assigned to a magistrate judge pursuant to the district court's General Order for Referral of Civil Matters to the United States Magistrate Judges of the Northern District of Alabama dated January 14, 2013, and re-assigned to the undersigned on April 3, 2014.  This report and recommendation is entered pursuant to that order, 28 U.S.C. § 636(b), and Rule 72(b) of the *Federal Rules of Civil Procedure*.

**I. <u>Motion to Recuse</u>**

On April 10, 2014, Simpson filed an objection to the court's reassignment of this action to the undersigned.  (Doc. 17).  Simpson states he believes the previously assigned magistrate judge would understand his claims better and questions the ability of the undersigned to assess his claims against state agencies and officials impartially based solely on her background as a federal prosecutor.  (*Id.*).  For these reasons, Simpson filed a motion seeking recusal of the undersigned on March 16, 2015.  (Doc. 18).  Simpson has identified no personal bias or prejudice that would prevent the undersigned from participating in this action, nor has he identified any other reason why the impartiality of the undersigned might reasonably be questioned.  *See* 28 U.S.C. § 144, 28 U.S.C. § 455.  Therefore, Simpson's motion seeking recusal of the undersigned is due to be denied.

**II. <u>Legal Standards</u>**

Rule 12(b)(1) provides for dismissal of actions over which a federal district court has no subject matter jurisdiction, while Rule 12(b)(6) provides for dismissal of complaints that fail to state a claim on which relief may be granted.  Fed. R. Civ. P. 12(b)(1) & (6).  "Because the Eleventh Amendment represents a constitutional limitation on the federal judicial power established in Article III, federal courts lack jurisdiction to entertain claims that are barred by the Eleventh Amendment."  *McClendon v. Georgia Dep't of Cmty. Health*, 261 F.3d 1252, 1256 (11th Cir. 2001) (internal citation omitted).  *See also See Seminole Tribe of Florida v. State of Florida*, 11 F.3d 1016, 1021 (11th Cir. 1994) (Where no exception applies, "the Eleventh Amendment serves as a jurisdictional bar to the suit.").

Rule 12(b)(6) must be considered against the backdrop of Rule 8(a)(2) of the *Federal Rules of Civil Procedure*.  Rule 8(a)(2) "requires only 'a short and plain statement of the claim

showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Twombly*, 550 U.S. at 555). "[L]abels and conclusions," "a formulaic recitation of the elements of a cause of action," and "naked assertion[s] devoid of further factual enhancement" are insufficient. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (internal quotation marks omitted).

To survive a motion to dismiss for failure to state a claim on which relief may be granted brought pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

Finally, because Simpson proceeds *pro se*, his complaint will be construed liberally. *See Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.").

3

## III. Relevant Factual Allegations

Simpson is a licensed social worker with a bachelor's degree in social work from Jacksonville State University and 15 graduate hours in special education. (Doc. 1 at ¶ 39). He is a member of the Echota Cherokee Tribe, is bi-polar, and has attention deficit disorder and a learning disability. (*Id.* at ¶¶ 29, 41). He claims the defendants have knowledge of his race and disabilities and have not hired him for a social worker position on account of his race and disabilities and in retaliation for multiple lawsuits he has brought against them and of which they are aware. (*Id.* at ¶¶ 52-56). According to Simpson, he has been forced to sue the defendants multiple times to make information regarding who the defendants have hired public. (*Id.* at ¶ 28).[2] In support of his claims, Simpson alleges as follows:

Simpson was forced to resign from his position at Marshall County DHR in 2004 "because of a girl supposedly involved with DHR that [he] knew nothing about" and a mental health issue. (*Id.* at ¶ 8). In response to the termination of his employment with Marshall County DHR and his failure to be re-hired, Simpson sued Marshall County DHR and other Alabama DHR entities in 2006, alleging he was discriminated against on the basis of his disabilities. (*Id.* at ¶ 25).[3] In November 2010, Simpson sued various Alabama DHR entities and

---

[2] In the following paragraphs, the undersigned supplements Simpson's factual allegations regarding his prior lawsuits against the defendants with information gleaned from the public records of those lawsuits, all of which were litigated in this district court. *See Nguyen v. United States*, 556 F.3d 1244, 1259 n.7 (11th Cir. 2009) (federal court may take judicial notice of its own records).

[3] Simpson commenced an action against Marshall County DHR on April 19, 2006, asserting vague claims related to the termination of his employment with Marshall County DHR in 2004 and his subsequent failure to be re-hired. *See Simpson v. Marshall County Department of Human Resources, State of Alabama*, No. 06-0758 (N.D. Ala. filed Apr. 19, 2006). That action was dismissed without prejudice pursuant to Rule 12(b)(6) for failure to state a claim on which relief may be granted. *See id.* at Docs. 10 & 11. Simpson commenced another action against Marshall County DHR on November 21, 2006. *See Simpson v. Alabama Department of Human Resources, State of Alabama, et al.*, No. 06-4740 (N.D. Ala. filed Nov. 21, 2006). That suit also named as defendants other Alabama DHR entities. *See id.* Simpson claimed he was constructively discharged from Marshall County DHR in 2004 because of his disabilities and that the defendants failed to re-hire him because of his disabilities. *See id.* at Doc. 1. After dismissing Simpson's request for punitive damages, *see id.* at Docs. 16 & 17, the court entered summary judgment in favor of the defendants on all of Simpson's claims, *see id.* at Docs. 49 & 50. The Eleventh Circuit affirmed the

individuals employed by those entities, alleging the defendants failed to interview or hire him in retaliation for his earlier lawsuits. (*Id.* at ¶ 26).[4]

Simpson was placed back on "the register"[5] on October 7, 2011, and has remained on the register since that time. (*Id.* at ¶¶ 8, 40). The register, as well as employment applications submitted by Simpson, show Simpson is Native American. (*Id.* at ¶ 44). Simpson alleges he has "good faith" that in the two years preceding his commencement of this action in August 2013, all of the defendants were hiring. (*Id.* at ¶ 38).

Of 63 applicants for a position with St. Clair County DHR in June 2012, Simpson was the only Native American. (*Id.* at ¶ 45). That position was filled by Amanda Johnson, who was white and had two criminal convictions. (*Id.*). In July 2012, Simpson sued St. Clair County DHR, various other Alabama DHR entities, and individuals employed by the Alabama DHR entities for disability discrimination and retaliation in connection with his failure to be hired for the St. Clair County position or other social worker positions. (*Id.* at ¶ 27).[6]

DeKalb County DHR interviewed Simpson for a social worker position on January 13, 2013. (*Id.* at ¶ 19). Denise Raines, the director of DeKalb County DHR, conducted the interview. (*Id.* at ¶¶ 14, 15, 21). Three other people participated in the interview, including Jane

---

district court's grant of summary judgment. *See Simpson v. Alabama Dep't of Human Res.*, 311 Fed. App'x 264 (11th Cir. 2009).

[4] *See Simpson v. State of Alabama Department of Human Resources, et al.*, No. 10-3084 (N.D. Ala. filed Nov. 15, 2010). The court dismissed certain of Simpson's claims, *see id.* at Docs. 26 & 27, and, thereafter, entered summary judgment in favor of the defendants on the remaining claims, *see id.* at Docs. 60 & 61. The Eleventh Circuit affirmed the district court's grant of summary judgment. *See Simpson v. State of Alabama Dep't of Human Res.*, 501 Fed. App'x 951 (11th Cir. 2012).

[5] "Whenever a county department of human resources wants to hire a new social worker, it contacts the Alabama State Personnel Department to obtain a list (commonly referred to as a 'register') of eligible candidates . . . ." *Simpson v. State of Alabama Department of Human Resources, et al.*, No. 12-2467 at Doc. 39, p. 9, n.3 (N.D. Ala. filed July 16, 2012).

[6] *See Simpson v. State of Alabama Department of Human Resources, et al.*, No. 12-2467 (N.D. Ala. filed July 16, 2012). The court dismissed certain of Simpson's claims, *see id.* at Docs. 17 & 18, and, thereafter, entered summary judgment in favor of the defendants on the remaining claims, *see id.* at Docs. 39 & 40. Although Simpson appealed the district court's decision, the Eleventh Circuit dismissed the appeal for Simpson's failure to prosecute. *See id.* at Doc. 46.

Bonds, a DeKalb County DHR supervisor.  (*Id.* at ¶¶ 16, 17, 37).  Raines asked incomplete, fragmented, and personal questions for the purpose of making them unintelligible to Simpson. (*Id.* at ¶ 23).  Simpson asked Raines whether she " '[got] everything right the first time,'" and Raines responded, " 'I must[;] I am the one asking the questions here,'" which Simpson alleges was a reference to a December 2007 deposition Raines gave in connection with his November 2006 lawsuit.  (*Id.* at ¶¶ 22, 24).  During that deposition, Raines made Simpson out as not being worth spitting on.  (*Id.* at ¶ 32).  At the close of the interview, Simpson gave Raines information regarding his discrimination in 2004.  (*Id.* at ¶ 30).

On January 30, 2013, Simpson received a letter from Raines informing him he was not selected for the position.  (*Id.* at ¶¶ 20, 33).  A liberal reading of the complaint suggests Simpson believes the person selected for the position is white.  (*See id.* at ¶ 44).  In the letter, Raines stated the decision was hard to make because all of the candidates were so qualified and asked Simpson to interview again.  (*Id.* at ¶ 33).  According to Simpson, the word "qualified" is a legal term associated with his prior lawsuits against the defendants that Raines used to mock him.  (*Id.* at ¶ 34).

Simpson alleges that on February 4, 2013, he filed a charge of disability discrimination and retaliation against DeKalb County DHR with the Equal Employment Opportunity Commission.  (*Id.* at ¶ 35).  He further alleges that on March 6, 2013, he filed race discrimination charges against St. Clair County DHR and DeKalb County DHR with the EEOC.  (*Id.* at ¶¶ 42, 43).[7]  Finally, he alleges that on March 22, 2013, when his disability-related EEOC charge

---

[7] Attached to Simpson's complaint are three EEOC charges.  The first is dated February 4, 2013, and names Alabama DHR as the employer that discriminated against Simpson based on his disabilities and retaliated against him.  (Doc. 1-1 at 2).  The second is dated March 6, 2013, and names DeKalb County DHR as the employer that discriminated against Simpson based on race.  (*Id.* at 4).  The third is dated March 6, 2013, and names St. Clair County DHR as the employer that discriminated against Simpson based on race.  (*Id.* at 5).

against DeKalb County DHR had been pending for almost two months, Bonds cut in front of him, tried to run him off the road, and cursed at him from her vehicle.  (*Id.* at ¶ 37).

Simpson commenced this action in August 2013, while his 2012 lawsuit remained pending.  He asserts the following claims against each of the DHR entity defendants, as well as the individual defendants in their official and individual capacities: (1) race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, (2) race discrimination under 42 U.S.C. § 1983, (3) a violation of the Fourteenth Amendment's Equal Protection Clause under § 1983, and (4) disability discrimination and retaliation under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701, *et seq.*  (*Id.* at ¶¶ 49-64).  He seeks a position with DHR as a social worker through a permanent injunction, back pay, and benefits.  (*Id.* at p. 10).

## IV. Discussion

### A. Race Discrimination Claims

Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens . . . ."  § 1981(a).  It prohibits "intentional race discrimination in the making and enforcement of public and private contracts, including employment contracts."  *Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 471 (11th Cir. 1999).  Section 1983, which prohibits the deprivation of a federal right by a "person acting under color of state law," *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001), provides the sole cause of action against state actors for violations of § 1981, *Butts v. County of Volusia*, 222 F.3d 891, 892 (11th Cir. 2000).  Finally, the Fourteenth Amendment's Equal Protection

Clause prohibits intentional race discrimination in public employment. *Bush v. Houston Cty. Comm'n*, 414 Fed. App'x 264, 266 (11th Cir. 2011) (citing *Williams v. Consol. City of Jacksonville*, 341 F.3d 1261, 1269 (11th Cir. 2003); *Cross v. State of Alabama, State Dep't of Mental Health & Mental Retardation*, 49 F. 3d 1490, 1507 (11th Cir. 1995)).  Section 1983 provides a cause of action for a Fourteenth Amendment violation. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994) (noting § 1983 provides method for vindicating infringement of constitutional right).  In the employment context, race discrimination claims under Title VII, § 1981, and § 1983 require the same elements of proof. *Bush*, 414 Fed. App'x at 266 (citing *Rice-Lamar v. City of Ft. Lauderdale, Florida*, 232 F.3d 836, 843 n.11 (11th Cir. 2000)).  However, Title VII, § 1981, and § 1983 do not have the same administrative prerequisites, provide relief against the same individuals and entities, or implicate the same immunities.

### 1. Title VII Claims

#### a. Individual Defendants

" 'The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the [Civil Rights Act of 1964].'" *Hinson v. Clinch County, Georgia Bd. of Educ.*, 231 F.3d 821, 827 (11th Cir. 2000) (quoting *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991)).  *See also Dearth v. Collins*, 441 F.3d 931, 933 (11th Cir. 2006).  "Individual capacity suits under Title VII are [] inappropriate." *Busby*, 931 F.2d at 772.  Accordingly, Simpson's claims against Raines, Bonds, and Pilkington in their individual capacities are due to be dismissed.

Title VII claims may be asserted against individual employees in their official capacities. *Cross*, 49 F. 3d at 1504.  However, when those claims also are asserted against the employer, the claims against the individual employees in their official capacities, which essentially are claims

8

against the employer, *see Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985) (holding "[o]fficial-capacity suits represent [] only another way of pleading an action against an entity of which an officer is an agent" (internal quotation marks omitted)), are redundant, *Strickland v. Bd. of Tr. of Univ. of State of Alabama*, 2014 WL 6749019, at *3 (N.D. Ala. Dec. 1, 2014). Because Simpson asserts Title VII race discrimination and retaliation claims against the individual defendants in their official capacities and against the DHR entities that employ them, the Title VII claims against the former are due to be dismissed.

### b. DHR Entity Defendants

The discriminatory conduct of which Simpson complains is the DHR entity defendants' failure to hire him for a social worker position.

> In a traditional failure-to-hire case, the plaintiff establishes a prima facie case by demonstrating that: (1) [he] was a member of a protected class; (2) [he] applied and was qualified for a position for which the employer was accepting applications; (3) despite [his] qualifications, [he] was not hired; and (4) the position remained open or was filled by another person outside of [his] protected class.

*E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1273 (11th Cir. 2002). Simpson alleges he is Native American and, therefore, a member of a protected class. (Doc. 1 at ¶¶ 41, 44). He further alleges he has been on the register of persons eligible to be hired by the defendants since October 7, 2011, and believes the defendants were hiring during the two years preceding his commencement of this action. (*Id.* at ¶¶ 8, 38, 40). More specifically, he alleges he applied and interviewed for a social worker position with DeKalb County DHR in January 2013, but was not hired. (*Id.* at ¶¶ 19-20). A liberal reading of the complaint suggests Simpson believes the person selected for the position is white and that the defendants have interviewed and hired other white social workers in the two years prior to the commencement of this action. (*See id.* at ¶ 44).

Although the defendants argue Simpson fails to allege how he was treated differently than a person outside his protected class (Doc. 7 at 12), the allegation that the defendants hired white social workers rather than Simpson, a Native American, clearly identifies how Simpson believes the defendants treated him differently.  The defendants also argue Simpson fails to identify a valid comparator.  (*Id.* at 11).  However, "a failure to identify specific comparators in a[n] [employment discrimination] complaint does not necessarily mean it should be dismissed." *Baker v. Hafez Corp.*, 2014 WL 1760976, at *9 n.13 (S.D. Ala. May 2, 2014) (collecting authority).  At this stage of the litigation, Simpson's allegation the defendants have hired white social workers rather than him is sufficient.  In sum, Simpson states plausible Title VII race discrimination claims against the DHR entity defendants, with one exception:

St. Clair County DHR's employment of a white social worker in June or July of 2012, rather than Simpson, is not actionable under Title VII as a discrete act of racial discrimination because it is time-barred.  Before bringing suit under Title VII, a potential plaintiff must exhaust his administrative remedies.  *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314 (11th Cir. 2001).  A potential plaintiff begins the process of exhausting his administrative remedies by timely filing a charge of discrimination with the EEOC.  *Id.*  He must file the EEOC charge within 180 days of the alleged discrimination.  42 U.S.C. § 2000e-5(e)(1).  Failure to file a timely EEOC charge results in a bar of the claims contained in the untimely charge.  *Jordan v. City of Montgomery*, 283 Fed. App'x 766, 767 (11th Cir. 2008) (citing *Alexander v. Fulton County, Georgia*, 207 F.3d 1303, 1332 (11th Cir. 2003)).  Simpson filed an EEOC charge in March 2013, regarding alleged discrimination that occurred more than 180 days earlier, in June or July of 2012.  Therefore, the EEOC charge was untimely.[8]  Accordingly, St. Clair County DHR's employment of a white

---

[8] In fact, the untimeliness of the charge was the reason why the EEOC dismissed it.  Attached to the defendants' motion to dismiss is the EEOC's notice to Simpson it was dismissing the charge as untimely.  (Doc. 7-1).  Simpson

social worker in June or July of 2012 is not actionable under Title VII as a discrete act of racial discrimination.  This does not require dismissal of St. Clair County DHR as a defendant because it does not appear the hiring of a white social worker in June or July of 2012 is the only basis of Simpson's race discrimination claim against St. Clair County DHR.

### 2. § 1981 & Fourteenth Amendment Claims Asserted Through § 1983

#### a. DHR Entity Defendants & Individual Defendants Sued in Official Capacities

Although § 1983 provides the cause of action for a violation of § 1981 by a "person acting under color of state law," state agencies and state officials sued in their official capacity for damages are not "person[s]" subject to suit under § 1983.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64, 71 (1989).   Alabama DHR is a state agency, as is each of its county departments.  *See* Ala. Code §§ 38-2-1 (creating state department of human resources); 38-2-8 (creating county departments of human resources).  Therefore, the DHR entity defendants are not "person[s]" subject to suit under § 1983.  *See A.D. ex rel. McGhee v. Alabama Dep't of Human Res.*, 995 F. Supp. 2d 1253, 1269 (N.D. Ala. 2014) (holding Alabama DHR and Jefferson County DHR are state agencies and, thus, not "person[s]" subject to suit under § 1983).  Raines, Bonds, and Pilkington, who direct or supervise certain of the DHR entity defendants, are not "person[s]" subject to suit under § 1983, either, to the extent they are sued in their official capacities for money damages.

Moreover, the Eleventh Amendment bars suits for money damages against state agencies and state officials sued in their official capacities unless the state has waived its Eleventh

---

does not dispute the authenticity of the dismissal notice.  *See Chesnut v. Ethan Allen Retail, Inc.*, 971 F. Supp. 2d 1223,1228 (N.D. Ga. 2013) ("In ruling on a motion to dismiss, the district court may consider an extrinsic document if (1) it is central to the plaintiff's claim, and (2) its authenticity is not challenged.  Further, a document central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided that its contents are not in dispute.  In discrimination cases, the EEOC charge is a document that courts routinely consider when ruling on motions to dismiss, even if it was not attached to a pleading." (internal quotation marks and citations omitted)).

Amendment immunity or Congress has abrogated it.  U.S. Const. amend. XI; *Seminole Tribe of Florida v. State of Florida*, 11 F.3d 1016, 1021 (11th Cir. 1994) (noting exceptions to Eleventh Amendment immunity); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 101, 101 n.11 (1984) (Eleventh Amendment immunity extends to state officials sued in official capacities, provided state is real, substantial party in interest, which is the case where award of damages would be paid by state).  The State of Alabama has not waived its Eleventh Amendment immunity.  Ala. Const. Art. I, § 14 ("[T]he State of Alabama shall never be made a defendant in any court of law or equity."); *Carr v. City of Florence, Alabama*, 916 F. 2d 1521, 1525 (11th Cir. 1990).  Nor has Congress abrogated Eleventh Amendment immunity in actions brought pursuant to § 1983.  *Carr*, 916 F.2d at 1525 (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979)).  Therefore, the Eleventh Amendment bars Simpson's § 1981 and Fourteenth Amendment claims asserted through § 1983 against the DHR entity defendants and against Raines, Bonds, and Pilkington, to the extent those individual defendants are sued in their official capacities for money damages.[9]

Another exception to Eleventh Amendment immunity exists under the doctrine announced by the United States Supreme Court in *Ex parte Young*, 209 U.S. 123 (1908).  *Florida Ass'n of Rehab. Facilities, Inc., v. State of Florida Dep't of Health and Rehab. Servs.*, 225 F.3d 1208, 1219 (11th Cir. 2000).  Under that doctrine, a citizen may sue a state official in her official capacity for prospective injunctive relief to end a continuing violation of federal law.  *Id.*  In this case, not only does the Eleventh Amendment not bar suit, *id.*, but also the state official is considered a "person" for purposes of § 1983, *Will*, 491 U.S. at 71 n.10.

---

[9] By contrast, "[it] is undisputed that the Eleventh Amendment does not bar [] Title VII suit[s]."  *Cross*, 49 F.3d at 1502.

The Eleventh Circuit has held a request for re-instatement constitutes a request for prospective injunctive relief and, therefore, is not barred by the Eleventh Amendment. *See Cross*, 49 F.3d at 1503 (holding Eleventh Amendment did not bar request for re-instatement) (citing *Lassiter v. Alabama A&M Univ., Bd. of Trs.*, 3 F.3d 1482, 1485 (11th Cir. 1993), *reh'g en banc granted and opinion vacated*, 19 F.3d 1370 (11th Cir. 1994), *on reh'g*, 28 F.3d 1146 (11th Cir. 1994)). *See also Poindexter v. Dep't of Human Res.*, 946 F. Supp. 2d 1278, 1290 (M.D. Ala. 2013) (holding plaintiff's request for re-instatement was prospective and equitable and, therefore, not barred by Eleventh Amendment). Although Simpson argues the relief he seeks is re-instatement (Doc. 8 at 3-5), his request is more in the nature of instatement than re-instatement. A request for re-instatement implies a challenge to the termination of employment. In this action, Simpson does not challenge the termination of his employment with Marshall County DHR in 2004. He challenges his failure to be hired for new positions that have become available in various county departments of human resources and asks for an injunction placing him in one of those positions.

There is little authority addressing whether a request for instatement comes within the *Ex parte Young* exception to Eleventh Amendment immunity. *See Smith v. Sec'y of Dep't of Envtl. Prot. of Pennsylvania*, 540 Fed. App'x 80, 82 (3rd Cir. 2013) (noting that while there does appear to be agreement that injunctive relief returning a former employee to employment is permissible, whether injunctive relief requiring a plaintiff to be newly hired is a close question to which neither the Supreme Court nor any circuit court has provided a clear answer). The defendants argue generally and with little elaboration that *Ex parte Young* relief is not available against Raines, Bonds, or Pilkington because no continuing violation of federal law exists. (Doc. 7 at 7). The Eastern District of Pennsylvania rejected a similar argument in *Smith v. Sec'y of Dep't of*

13

*Envtl. Prot. of Pennsylvania*, reasoning the defendant failed to explain how a failure to hire is any different than the termination of an employee for purposes of determining whether a continuing violation of federal law exists.  2013 WL 6388555, at *3-4 (E.D. Penn. Dec. 5, 2013), *cert. denied*, 134 S. Ct. 1053 (Jan. 27, 2014).  The argument presented by the defendants in this case suffers from the same shortcoming.  They do not explain how a request for re-instatement comes within the *Ex parte Young* exception, while a request for instatement may not.

Ultimately, in *Smith*, the Pennsylvania district court held the plaintiff's failure-to-hire claim could proceed.  2013 WL 6388555, at *5.  The undersigned finds the reasoning of *Smith* persuasive and, accordingly, concludes Simpson's § 1981 and Fourteenth Amendment claims asserted through § 1983 against Raines, Bonds, and Pilkington in their official capacities seeking an order of instatement may proceed to the extent Simpson states a plausible race discrimination claim against these defendants.  Because Simpson states a plausible race discrimination claim against the DHR entity defendants under Title VII, he states plausible § 1981 and Fourteenth Amendment race discrimination claims against the individual defendants in their official capacities through § 1983.  *See Bush*, 414 Fed. App'x at 266 (race discrimination claims under Title VII, § 1981, and § 1983 require same elements of proof); *Kentucky*, 473 U.S. at 166-67 (official-capacity suits are effectively suits against entity of which official is an agent).  Moreover, the allegation that in June or July of 2012, St. Clair County DHR hired a white social worker and not Simpson may provide a basis for Simpson's race discrimination claims brought through § 1983 because neither that statute nor § 1981 requires exhaustion of administrative remedies.  *See Mathis v. Leggett & Platt*, 263 Fed. App'x 9, 12 (11th Cir. 2008) (holding plaintiff's § 1981 race discrimination claim survived despite untimely Title VII race discrimination charge because § 1981 actions are not subject to administrative exhaustion

requirement); *Grandison v. Smith*, 779 F.2d 637, 642 (11th Cir. 1986) ("There is no exhaustion of state remedies requirement for Section 1983 claims.").

### b. Individual Defendants Sued in Individual Capacity

The individual defendants sued in their individual capacities are "person[s]" subject to suit under § 1983, and the Eleventh Amendment does not shield them from suit in this capacity. *Hafer v. Melo*, 502 U.S. 21, 31 (1991). Furthermore, individuals may be sued in their individual capacities and held liable for discrimination under §§ 1981 and 1983, unlike under Title VII. *Hicks v. City of Alabaster, Alabama*, 2013 WL 979070, at *7 (N.D. Ala. Mar. 12, 2013) (citing *Shotz v. City of Plantation, Florida*, 344 F.3d 1161, 1176 (11th Cir. 2003)). However, "[a] claim for individual liability under Section 1981 requires an affirmative showing linking the individual defendant with the discriminatory action." *Perkins v. Kushla Water Dist.*, 21 F. Supp. 3d 1250, 1261 (S.D. Ala. 2014) (internal quotation marks omitted), *aff'd*, 598 Fed. App'x 899 (11th Cir. 2015). "[T]o establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Hafer*, 502 U.S. at 25 (internal quotation marks omitted) (emphasis in original).

The defendants' argument Simpson has failed to allege how Raines and Bonds personally participated in the discrimination (Doc. 7 at 9-10) seemingly ignores Simpson's allegations Raines conducted his interview for a social worker position with DeKalb County DHR in January 2013, Bonds participated in the interview, and Raines sent a letter informing him he had not been selected for the position. These allegations give rise to the reasonable inference Raines and Bonds participated in the decision whether to hire Simpson, which connects them to the alleged discrimination. Accordingly, Simpson states plausible race discrimination claims against

Raines and Bonds in their individual capacities through § 1983.[10]  However, the same is not true with respect to Pilkington.  The complaint contains no factual allegation that, if true, would establish an affirmative link between Pilkington and any race discrimination against Simpson.  In fact, it does not mention Pilkington at all, other than to identify her as the director of St. Clair County DHR.  Accordingly, Simpson's race discrimination claims asserted against Pilkington in her individual capacity through § 1983 are due to be dismissed, although Simpson should be permitted to amend his complaint to allege Pilkington's participation in race discrimination pursuant to Rule 15(a) of the *Federal Rules of Civil Procedure*.

### B. Rehabilitation Act Claims

The Rehabilitation Act prohibits programs that receive federal funds from discriminating in employment against individuals with disabilities.  *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citing 29 U.S.C. § 794(a)).  It also prohibits retaliation against an employee who has opposed disability discrimination.  *Burgos-Stefanelli v. Sec'y, U.S. Dep't of Homeland Sec.*, 410 Fed. App'x 243, 245 (11th Cir. 2011) (citing 29 U.S.C. § 794(d)).  The Eleventh Amendment does not immunize state agencies and officials from suit under the Rehabilitation Act.  *Garrett v. Univ. of Alabama at Birmingham*, 344 F.3d 1288, 1293 (11th Cir. 2003).

### 1. Individual Defendants

However, because Simpson's Rehabilitation Act claims against Raines, Bonds, and Pilkington in their official capacities are, in effect, claims against the DHR entities of which they are agents, *see Kentucky*, 473 U.S. at 167-68, and because Simpson also has asserted

---

[10] "Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known."  *Andujar v. Rodriguez*, 486 F.3d 1199, 1202 (11th Cir. 2007) (internal quotation marks omitted).  The defendants do not argue or provide any analysis as to whether Raines or Bonds is entitled to qualified immunity.  In fact, they assert no qualified immunity analysis is necessary because Simpson has failed to state a claim against the individual defendants in their individual capacities.  (Doc. 7 at 10-11).

Rehabilitation Act claims against those entities, his claims against the individuals in their official capacities are duplicative and due to be dismissed, *see Ginwright v. Dep't of Revenue for Alabama*, 2013 WL 1187943, at *3-4 (M.D. Ala. Mar. 21, 2013) (dismissing official capacity Rehabilitation Act claims against individual defendants because plaintiff also asserted Rehabilitation Act claims against entity of which those defendants were agents).  Moreover, Simpson's Rehabilitation Act claims against Raines, Bonds, and Pilkington in their individual capacities are due to be dismissed because the Rehabilitation Act does not provide a cause of action against persons sued in their individual capacities.  *See Berkery v. Kaplan*, 518 Fed. App'x 813, 814-15 (11th Cir. 2013) (Rehabilitation Act does not provide for individual liability); *Pritchard v. Southern Co. Servs.*, 102 F.3d 1118, 1119 n.7 (11th Cir. 1996) (remedy for any discrimination plaintiff may have suffered because of disability lies against employer, not individual officers of employer); *Simpson v. Alabama Dep't of Human Res.*, 2012 WL 5873553, at *3, (N.D. Ala. Nov. 16, 2012) (dismissing Simpson's individual capacity Rehabilitation Act claims).

### 2. DHR Entity Defendants

#### a. Duplicative Nature of Claims

As an initial matter, the defendants argue Simpson's Rehabilitation Act claims against Alabama DHR, Jefferson County DHR, Marshall County DHR, and St. Clair County DHR should be dismissed as "duplicative" of his Rehabilitation Act claims against those entities in his 2012 lawsuit, which was pending when the defendants filed their motion to dismiss in this action.  (Doc. 7 at 17-18).  The defendants offer no legal analysis of the alleged duplicative nature of these claims and instead merely cite a single Ninth Circuit case for their position that "[t]o allow Simpson to proceed against these defendants on duplicative claims would not be

17

appropriate." (*Id.* at 18).   Because the defendants fail to analyze or provide binding legal authority for their request that the court dismiss Simpson's claims against Alabama DHR, Jefferson County DHR, Marshall County DHR, and St. Clair County DHR as duplicative, the undersigned will not address the request.  *See Willmore-Cochran v. Wal-Mart Assocs.*, Inc., 919 F. Supp. 2d 1222, 1245-46 (N.D. Ala. 2013) (noting that where summary judgment movant "offers nothing to flesh out the applicable legal standards or to explain how they apply in concrete circumstances[,] [t]his 'court has no duty to research and conduct legal arguments available to a party.'" (quoting *Adler v. Duval Cty. Sch. Bd.*, 112 F.3d 1475, 1481 n.12 (11th Cir. 1997))).

## b. Sufficiency of Factual Allegations

### i. Disability Discrimination

"The elements of a Rehabilitation Act [disability discrimination] claim are that: (1) 'an individual has a disability;' (2) 'the individual is otherwise qualified for the position;' and (3) 'the individual was subjected to unlawful discrimination as the result of his disability.'"  *Curry v. Sec'y, Dep't of Veterans Affairs*, 518 Fed. App'x 957, 963 (11th Cir. 2013) (quoting *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000)).  Simpson alleges he is bi-polar and has attention deficit disorder and a learning disability (Doc. 1 at ¶ 29) and, thereby, sufficiently pleads the first element of a disability discrimination claim under the Rehabilitation Act.[11]  He further alleges his degree and training qualified him for a social worker position with the DHR entity defendants (Doc. 1 at ¶¶ 39, 58, 59) and, thereby, sufficiently pleads the second element.  Finally, he alleges

---

[11] Attached to Simpson's response to the defendants' motion to dismiss is a letter from a psychiatrist dated August 27, 2010, stating she has treated Simpson for bi-polar disorder since May 2006.  (Doc. 8 at 17).  The undersigned has not considered this exhibit in addressing the defendants' motion to dismiss.  *See* FED. R. CIV. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

the DHR entity defendants have knowledge of his disabilities and have not hired him because of his disabilities (Doc. 1 at ¶¶ 52, 54) and, thereby, sufficiently pleads the third element. Accordingly, Simpson states plausible disability discrimination claims against the DHR entity defendants under the Rehabilitation Act.

## ii. **Retaliation**

To establish a prima facie case of retaliation under the Rehabilitation Act, a plaintiff must show that: "(1) [he] engaged in statutorily protected expression; (2) [he] suffered a materially adverse employment action; and (3) there was some causal relationship between the two events." *Burgos-Stefanelli*, 410 Fed. App'x at 246 (citing *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008)). "Statutorily protected expression includes . . . participating in discrimination-based lawsuits." *Laosebikan v. Coca-Cola Co.*, 167 Fed. App'x 758, 764 (11th Cir. 2006) (citing *Pipkins v. City of Temple Terrance, Florida*, 267 F.3d 1197, 1201 (11th Cir. 2001)). By alleging he previously has sued Alabama DHR and various of its county departments for disability discrimination and retaliation (Doc. 1 at ¶¶ 25-27), Simpson sufficiently pleads the first element of a retaliation claim.

"A materially adverse action is one that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Shannon v. Postmaster Gen. of U.S. Postal Serv.*, 335 Fed. App'x 21, 26 (11th Cir. 2009) (quoting *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). The defendants argue Simpson has failed to identify a materially adverse action Etowah County DHR took against him because he does not allege he interviewed for a social worker position with Etowah County DHR during the time period in question or that Etowah County DHR even had an open social worker position during that time

period.  (Doc. 7 at 16-17).[12]  The defendants also note Simpson does not allege he received a notice from Etowah County DHR that he was not selected for an open position or that Etowah County DHR hired someone other than himself.  (*Id.* at 17).  Even so, Simpson's allegations he has been on a register of persons eligible to be hired as a social worker by all of the county departments of Alabama DHR since October 7, 2011, and believes all of the DHR entity defendants were hiring during the two years preceding his commencement of this action (Doc. 1 at ¶¶ 8, 38, 40) are, at this stage of the litigation, sufficient to give rise to the inference the DHR entity defendants hired individuals other than Simpson for social worker positions during the time period in question.  In two of Simpson's prior lawsuits, this court has held knowing he would not be interviewed or hired for a position because he brought a lawsuit alleging disability discrimination might dissuade a reasonable employee from pursuing the lawsuit.  *See Simpson*, No. 10-3084 at Doc. 26, p. 13 (permitting Simpson's Rehabilitation Act retaliation claim to proceed past Rule 12(b)(6) stage as to certain DHR entity defendants); *Simpson*, No. 12-2467 at Doc. 17, pp. 6-7 (permitting Simpson's Rehabilitation Act retaliation claim to proceed past Rule 12(b)(6) stage as to all DHR entity defendants).  Accordingly, Simpson sufficiently pleads the second element of a retaliation claim.

Finally, "[t]o establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct and that the protected activity and the adverse action were not wholly unrelated."  *Burgos v. Chertoff*, 274 Fed. App'x 839, 843 (11th Cir. 2008) (quoting *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000)).  Simpson alleges the decision-makers for the DHR entity defendants knew of his prior lawsuits.  (Doc. 1 at ¶ 52).  The defendants argue that even if the decision-makers for DeKalb County DHR knew of

---

[12] The defendants do not make this argument as to Jefferson County DHR or Marshall County DHR.  (*See* Doc. 7 at 16-17).

Simpson's November 2006 lawsuit against DeKalb County DHR, and even if the decision-makers for Etowah County DHR knew of Simpson's 2010 lawsuit against the director of Etowah County DHR, those lawsuits are too remote in time to establish a causal connection between the lawsuits and any adverse action taken against Simpson during the time period in question.  (Doc. 7 at 15-17).[13]  The defendants correctly note Simpson's factual allegations largely focus on the November 2006 lawsuit as the basis for DeKalb County DHR's failure to hire him in January 2013.  (*See* Doc. 1 at ¶¶ 24, 25, 32).  They also correctly note that to establish a causal connection between protected activity and an adverse employment action, the temporal proximity between the two must be very close.  *See Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004).  Courts have held a three-to-four month disparity is insufficient to establish a causal connection.  *See id.* (citing *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).  However, Simpson also alleges his 2012 lawsuit constitutes protected activity of which the decision-makers for each of the DHR entity defendants were aware.  (Doc. 1 at ¶¶ 27, 52).  The temporal proximity between any materially adverse action taken by the DHR entity defendants against Simpson within three or four months of Simpson's commencement of that lawsuit in July 2012 could establish a causal connection between the two.  Accordingly, Simpson sufficiently pleads the third element of a retaliation claim.[14]  In sum, Simpson states a plausible retaliation claim against the DHR entity defendants under the Rehabilitation Act.

---

[13] No causal-connection argument is made with respect to the other DHR entity defendants.  (*See* Doc. 7 at 15-17).

[14] The defendants also assert, with little analysis or argument, that Simpson's Rehabilitation Act retaliation claim against Etowah County is time-barred.  "For Rehabilitation Act claims originating in Alabama, that state's two-year period for personal injury actions, founs in Ala. Code § 6-2-38(l), supplies the applicable statute of limitations."  *Simpson*, 501 Fed. App`x at 953-54 (citing *Jones v. Preuit & Mauldin*, 876 F.2d 1480, 1483 (11th Cir. 1989)).  As to Etowah County DHR, the discriminatory conduct of which Simpson complains is that entity's failure to interview him for a social worker position in the two years preceding his commencement of this action.  Accordingly, it is not time-barred.

21

**V. Recommendation**

For the foregoing reasons, the undersigned **RECOMMENDS** Simpson's motion to recuse (Doc.  18) be **DENIED**.  The undersigned further **RECOMMENDS** the defendants' motion to dismiss (Doc. 7) be **GRANTED** in part and **DENIED** in part:

The undersigned **RECOMMENDS** the motion be **GRANTED** to the extent Simpson's Title VII race discrimination claims and Rehabilitation Act disability discrimination and retaliation claims against Raines, Bonds, and Pilkington in their official capacities be **DISMISSED** as redundant and Simpson's Title VII race discrimination claims and Rehabilitation Act disability discrimination and retaliation claims against those individuals in their individual capacities be **DISMISSED** as non-cognizable, all pursuant to Rule 12(b)(6). The undersigned further **RECOMMENDS** the motion be **GRANTED** to the extent Simpson's race discrimination claims asserted through § 1983 against the DHR entity defendants and against Raines, Bonds, and Pilkington in their official capacities for money damages be **DISMISSED** pursuant to Rule 12(b)(6) because those defendants are not "person[s]" subject to suit under § 1983, and pursuant to Rule 12(b)(1) as barred by the Eleventh Amendment.  Finally, the undersigned **RECOMMENDS** the motion be **GRANTED** to the extent Simpson's race discrimination claims asserted through § 1983 against Pilkington in her individual capacity be **DISMISSED** pursuant to Rule 12(b)(6), but that Simpson be permitted to amend his complaint to allege Pilkington's participation in race discrimination pursuant to Rule 15(a).

The undersigned **RECOMMENDS** the motion be **DENIED** to the extent Simpson's Title VII race discrimination claims against the DHR entity defendants; race discrimination claims asserted through § 1983 against Raines, Bonds, and Pilkington in their official capacities for prospective injunctive relief; race discrimination claims asserted through § 1983 against

Raines and Bonds in their individual capacities; and Rehabilitation Act claims against the DHR entity defendants be permitted to proceed.

## VI. <u>Notice of Right to Object</u>

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b)(2), Fed. R. Civ. P., any party may file specific written objections to this report and recommendation within fourteen (14) days from the date it is filed in the office of the Clerk.  Failure to file written objections to the proposed findings and recommendations contained in this report and recommendation within fourteen (14) days from the date it is filed shall bar an aggrieved party from attacking the factual findings on appeal, except for plain error.  Written objections shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection.  A copy of the objections must be served upon all other parties to the action.

**DONE** this 15th day of January, 2016.

_Staci G. Cornelius_
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE