FILED

2017 Feb-08  AM 11:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

|  |  |  |
|---|---|---|
| SAMMY EDWARD SIMPSON, II, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  4:13-cv-01450-SGC |
| | ) | |
| STATE OF ALABAMA DEPARTMENT OF | ) | |
| HUMAN RESOURCES, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER[1]</u>

This employment discrimination case was filed by Sammy Edward Simpson, II, proceeding *pro se*. On August 12, 2016, the undersigned directed Simpson to file a second amended complaint. (Doc. 30). On August 12, 2016, Simpson filed his second amended complaint, which is now the operative complaint. (Doc. 32). Simpson named as defendants the State of Alabama Department of Human Resources ("Alabama DHR"), DeKalb County Department of Human Resources ("DeKalb DHR"), Etowah County Department of Human Resources ("Etowah DHR"), Jefferson County Department of Human Resources ("Jefferson DHR"), Marshall County Department of Human Resources ("Marshall DHR"), St. Clair County Department of Human Resources ("St. Clair DHR"), Denise Raines (director of DeKalb DHR), Jane Bonds (a DeKalb DHR supervisor), and Cherri Pilkington (director of St. Clair DHR). (*Id.*). The defendants have moved to dismiss the second amended complaint, and Simpson has responded. (Docs. 35, 38). For the reasons discussed below, pursuant to Rules 12(b)(1) and (6)

---

[1] This action was assigned to the undersigned magistrate judge pursuant to the court's General Order for Referral of Civil Matters to the United States Magistrate Judges of the Northern District of Alabama dated January 14, 2013. The parties have unanimously consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 29).

of the *Federal Rules of Civil Procedure,* the defendants' motion to dismiss (Doc. 35) is denied in part and granted in part.

## I.   LEGAL STANDARDS

Rule 12(b)(1) provides for dismissal of actions over which a federal district court has no subject matter jurisdiction, while Rule 12(b)(6) provides for dismissal of complaints that fail to state a claim upon which relief may be granted.   FED. R. CIV. P. 12(b)(1) & (6).   "Because the Eleventh Amendment represents a constitutional limitation on the federal judicial power established in Article III, federal courts lack jurisdiction to entertain claims that are barred by the Eleventh Amendment."   *McClendon v. Georgia Dep't of Cmty. Health*, 261 F.3d 1252, 1256 (11th Cir. 2001) (internal citation omitted); s*ee also Seminole Tribe of Florida v. State of Florida*, 11 F.3d 1016, 1021 (11th Cir. 1994) (Where no exception applies, "the Eleventh Amendment serves as a jurisdictional bar to the suit.").

Rule 12(b)(6) must be considered against the backdrop of Rule 8(a)(2) of the *Federal Rules of Civil Procedure*.   Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'"   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).   Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed me accusation."   *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Twombly*, 550 U.S. at 555).   "[L]abels and conclusions," "a formulaic recitation of the elements of a cause of action," and "naked assertion[s] devoid of further factual enhancement" are insufficient.   *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (internal quotation marks omitted).

To survive a motion to dismiss for failure to state a claim upon which relief may be granted brought pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

Finally, because Simpson proceeds *pro se*, his complaint will be construed liberally.  *See Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.").

## II.    RELEVANT FACTUAL ALLEGATIONS

Simpson is a licensed social worker with a bachelor's degree in social work from Jacksonville State University and fifteen graduate hours in special education.  (Doc. 32 at ¶ 34).  He is a member of the Echota Cherokee Tribe, has been diagnosed with bi-polar disorder, and has attention deficit disorder and a learning disability.  (*Id.* at ¶ 35).  He claims the defendants have knowledge of his race and disabilities and have not hired him for a social worker position on account of his race and disabilities and in retaliation for multiple lawsuits he has brought against them and of which they are aware.  (*Id.* at ¶¶ 149-57).  According to Simpson, he has been forced to sue the defendants multiple times to make information regarding who the

defendants have hired public.  (*Id.* at ¶¶ 8, 41).[2]  In support of his claims, Simpson alleges as follows:

The defendants have knowledge of Simpson's disabilities and race through his previous lawsuits and other documentation.  (*Id.* at ¶ 8).  One of Simpson's previous lawsuits concerned the termination of his employment with Marshall DHR in 2004.  (*Id.* at ¶ 103).[3]  In response to the termination of his employment with Marshall DHR and his failure to be re-hired, Simpson sued Marshall DHR and other Alabama DHR entities in 2006, alleging he was discriminated against on the basis of his disabilities.  (*Id.* at ¶¶ 88, 103).  In November 2010, Simpson sued various Alabama DHR entities and individuals employed by those entities, alleging the defendants failed to interview or hire him in retaliation for his earlier lawsuits.  (*Id.* at ¶¶ 88, 104).[4]

---

[2] In the following paragraphs, the undersigned supplements Simpson's factual allegations regarding his prior lawsuits against the defendants with information gleaned from the public records of those lawsuits, all of which were litigated in this district court.  *See Nguyen v. United States*, 556 F.3d 1244, 1259 n.7 (11th Cir. 2009) (federal court may take judicial notice of its own records).

[3] Simpson commenced an action against Marshall DHR on April 19, 2006, asserting vague claims related to the termination of his employment with Marshall DHR in 2004 and his subsequent failure to be re-hired.  *See Simpson v. Marshall County Department of Human Resources, State of Alabama*, No. 06-0758 (N.D. Ala. *filed* Apr. 19, 2006).  That action was dismissed without prejudice pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.  *See id.* at Docs. 10 & 11.  Simpson commenced another action against Marshall DHR on November 21, 2006.  *See Simpson v. Alabama Department of Human Resources, State of Alabama, et al.*, No. 06-4740 (N.D. Ala. *filed* Nov. 21, 2006). In addition to Marshall DHR, that suit also named as defendants the State of Alabama DHR and the DHR agencies of DeKalb, Etowah, Jackson, and Jefferson Counties.  *See id.*  Simpson claimed he was constructively discharged from Marshall DHR in 2004 because of his disabilities and that the defendants failed to re-hire him because of his disabilities.  *See id.* at Doc. 1.  After dismissing Simpson's request for punitive damages, *see id.* at Docs. 16 & 17, the court entered summary judgment in favor of the defendants on all of Simpson's claims, *see id.* at Docs. 49 & 50.  The Eleventh Circuit affirmed the district court's grant of summary judgment.  *See Simpson v. Alabama Dep't of Human Res.*, 311 Fed. Appx. 264 (11th Cir. 2009).

[4] *See Simpson v. State of Alabama Department of Human Resources, et al.*, No. 10-3084 (N.D. Ala. *filed* Nov. 15, 2010). This suit brought claims under the Fair Labor Standards Act against Alabama DHR, as well as the county DHR agencies of Marshall, Jefferson, Mobile, and Baldwin Counties.  The court dismissed certain of Simpson's claims, *see id.* at Docs. 26 & 27, and thereafter entered summary judgment in favor of the defendants on the remaining claims, *see id.* at Docs. 60 & 61.  The Eleventh

Simpson has been on "the register"[5] since October 7, 2011, and has remained on the register at all times relevant to this suit. (*Id.* at ¶ 37). Simpson alleges he has "good faith" that in the two years preceding his commencement of this action in August 2013, all of the defendants were hiring. (*Id.* at ¶¶ 43-44). All of the defendants were aware of Simpson's race and disability. (*Id.* at ¶¶ 150, 153).

Of sixty-three applicants for a position with St. Clair DHR in June 2012, Simpson was the only Native American. (*Id.* at ¶ 124). That position was filled by Amanda Johnson, who was white and had two criminal convictions. (*Id.*). In July 2012, Simpson sued St. Clair DHR, various other Alabama DHR entities, and individuals employed by the Alabama DHR entities for disability discrimination and retaliation in connection with his failure to be hired for the St. Clair County position or other social worker positions. (*Id.* at ¶¶ 92, 105, 116).[6]

DeKalb DHR interviewed Simpson for a social worker position on January 13, 2013. (*Id.* at ¶ 50). Denise Raines, the director of DeKalb DHR, conducted the interview. (*Id.* at ¶¶ 52). Three other people participated in the interview, including Jane Bonds, a DeKalb DHR supervisor. (*Id.* at ¶¶ 138). Raines asked incomplete, fragmented, and personal questions for the purpose of making them unintelligible to Simpson. (*Id.* at ¶ 54). Simpson asked Raines whether she " '[got] everything right the first time,'" and Raines responded, " 'I must[;] I am the one

Circuit affirmed the district court's grant of summary judgment. *See Simpson v. State of Alabama Dep't of Human Res.*, 501 Fed. Appx. 951 (11th Cir. 2012).

[5] "Whenever a county department of human resources wants to hire a new social worker, it contacts the Alabama State Personnel Department to obtain a list (commonly referred to as a 'register') of eligible candidates . . . ." *Simpson v. State of Alabama Department of Human Resources, et al.*, No. 12-2467 at Doc. 39, p. 9, n.3 (N.D. Ala. *filed* July 16, 2012).

[6] *See Simpson v. State of Alabama Department of Human Resources, et al.*, No. 12-2467 (N.D. Ala. *filed* July 16, 2012). The court dismissed certain of Simpson's claims, *see id.* at Docs. 17 & 18, and thereafter entered summary judgment in favor of the defendants on the remaining claims, *see id.* at Docs. 39 & 40. Although Simpson appealed the district court's decision, the Eleventh Circuit dismissed the appeal for Simpson's failure to prosecute. *See id.* at Doc. 46.

asking the questions here,'" which Simpson alleges was a reference to a December 2007 deposition Raines gave in connection with his November 2006 lawsuit.  (*Id.* at ¶¶ 53, 55). During the 2013 interview, Raines made "inappropriate, disruptive Indian howls" at Simpson. (*Id.* at ¶ 56).  At the close of the interview, Simpson gave Raines information regarding the discriminatory action taken against him in 2004.  (*Id.* at ¶ 59).

On January 30, 2013, Simpson received a letter from Raines informing him he was not selected for the position.  (*Id.* at ¶¶ 51).  A liberal reading of the complaint suggests Simpson believes the person selected for the position is white.  (*See id.* at ¶ 71).  In the letter, Raines stated the decision was hard to make because all of the candidates were so qualified and asked Simpson to interview again.  (*Id.* at ¶ 57).  According to Simpson, the word "qualified" is a legal term associated with his prior lawsuits against the defendants, and Raines used the term to mock him.  (*Id.* at ¶ 58).

Simpson alleges that on February 4, 2013, he filed a charge of disability discrimination and retaliation against DeKalb DHR with the Equal Employment Opportunity Commission.  (*Id.* at ¶ 60).  He further alleges that on March 6, 2013, he filed race discrimination charges against St. Clair DHR and DeKalb DHR with the EEOC.  (*Id.* at ¶¶ 117, 140).[7]  Finally, he alleges that on March 22, 2013, when his disability-related EEOC charge against DeKalb DHR had been pending for almost two months, Bonds cut in front of him, tried to run him off the road, and cursed at him from her vehicle.  (*Id.* at ¶ 142, 143).

---

[7] Attached to Simpson's complaint are three EEOC charges.  The first is dated March 6, 2013, and names DeKalb DHR as the employer that discriminated against Simpson based on his disabilities and retaliated against him.  (Doc. 32 at 27).  The second is dated February 4, 2013, and names Alabama DHR as the employer that discriminated against Simpson based on race.  (*Id.* at 29).  Based on the dates of the interview and rejection letter alleged, it is apparent this charge concerns the same interview at DeKalb DHR which Simpson complained about in his March 6, 2013 claim discussed above.  The third is also dated March 6, 2013, and names St. Clair County DHR as the employer that discriminated against Simpson based on race.  (*Id.* at 31).

Simpson commenced this action in August 2013, while his 2012 lawsuit remained pending. He asserts the following claims against each of the DHR entity defendants, as well as the individual defendants in their official and individual capacities: (1) race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, (2) race discrimination under 42 U.S.C. § 1983, (3) a violation of the Fourteenth Amendment's Equal Protection Clause under § 1983, (4) disability discrimination and retaliation under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701, *et seq.*, and (5) "breach of written agreement." (*Id.* at ¶¶ 10 – 32; 148-175). He seeks a position with DHR as a social worker through a permanent injunction, back pay, and benefits. (*Id.* at 26).

## III.   DISCUSSION

### A.   Procedural Bars To Claims

#### 1.   *Res Judicata*

In their motion to dismiss the amended complaint, the defendants argue Simpson's present case is not his first action filed against DHR entities and individuals. (Doc. 35). They suggest this suit relies on the same set of facts as his 2012 case and urge dismissal based on *res judicata* and collateral estoppel. (*Id.* at 27-30). In his 2012 lawsuit, Simpson brought claims against the State of Alabama DHR, Marshall DHR, Jefferson DHR, and St. Clair DHR; he also sued individual defendants Nancy Buckner, William King, Vera Warrant, and Terri Coley. *Simpson v. Ala. Dep't Human Resources, et al.*, No. 7:12-cv-02467-RDP (N.D. Ala. *filed* July 16, 2012), Doc. 1. Simpson alleged retaliation and discrimination in violation of the Rehabilitation Act and the Fourteenth Amendment. (*Id.* at ¶¶ 6-15). The court dismissed all individual defendants (*Id.* at Doc. 18) and granted summary judgment in favor of the remaining defendants (*Id.* at Doc. 39).

The doctrine of *res judicata* "bars the filing of claims which were raised or could have been raised in an earlier proceeding." *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999). *Res judicata* bars not just the precise legal theory argued in the earlier litigation but "all legal theories and claims arising out of the same nucleus of operative fact." *Manning v. City of Auburn*, 953 F.2d 1355, 1358 (11th Cir. 1992). Claims cannot be brought twice, and to the extent Simpson's latest suit involves the same causes of action decided in his 2012 suit, those causes cannot be heard now. This includes claims he could have included in the 2012 complaint, whether he actually brought them at that time or not.

On the other hand, *res judicata* does not bar claims which accrued after the earlier complaint was filed. This is true even if Simpson could have added them to the earlier complaint by supplemental pleadings. *See Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354 (11th Cir. 1998). In *Pleming*, the Eleventh Circuit addressed whether *res judicata* barred claims in a plaintiff's second lawsuit. The facts were similar to the present case in that the causes of action were employment discrimination and retaliation over a series of interactions and hiring events. While the first suit was pending, Pleming brought a second suit over an alleged incident that occurred during the pendency of the earlier case. Once the first suit was disposed of in favor of the defendants, they moved to dismiss the second suit as barred by *res judicata*, arguing that Pleming could have supplemented his pleadings to include the "after-acquired" cause of action. The defendants pointed out that he had referred to the later round of alleged discrimination/retaliation in briefs filed in the first suit. The district court agreed and dismissed the second suit, but the circuit court reversed the dismissal, stating:

> [W]e do not believe that the res judicata preclusion of claims that "could have been brought" in the earlier litigation includes claims which arise after the original pleading is filed in the earlier litigation. Instead, we believe that, for res judicata purposes, claims

8

> that "could have been brought" are claims in existence at the time
> the original complaint is filed or claims actually asserted by
> supplemental pleadings or otherwise in the earlier action.

*Pleming*, 142 F.3d at 1357 (quoting *Manning* at 1359).

The *Pleming* court looked to the *Manning* decision's observation that "Federal Rule of Civil Procedure 15(d), which governs supplemental pleadings, makes such a pleading optional" and held that "the doctrine of *res judicata* does not punish a plaintiff for exercising the option not to supplement the pleadings with an after-acquired claim." 142 F.3d at 1357.

By contrast, the Eleventh Circuit in *Ragsdale* distinguished *Pleming* in reviewing a suit by a relator who lost his *qui tam* suit and then attempted to bring a retaliation claim against his employer – after his False Claims Act suit was entirely disposed of. *Ragsdale*, 193 F.3d at 1237. The retaliation he complained of was based on exactly the same "common nucleus of operative fact" as the *qui tam* suit. Specifically, he was fired, and then ten months later he filed the *qui tam* action. *Id.* His termination was the retaliatory action alleged in his employment suit, so it was clear that claim had to have accrued by the time he filed the *qui tam* complaint. The *Ragsdale* court held the relator/plaintiff was obliged to include all then-available claims in his first complaint. *Id.* at 1240. The court reasoned that if he were not required to do so, it would encourage exactly the behavior *res judicata* is designed to prevent: the reservation of claims that could be brought later if the initial action was unsuccessful.

Simpson's earlier suit was filed on July 16, 2012. Simpson now alleges he was interviewed by Denise Raines and Jane Bonds at DeKalb DHR in January of 2013, and his application was rejected shortly after. (Doc. 32 at ¶¶ 50-79; 138-47). He filed an EEOC charge in February 2013, and claims he was run off the road by Bonds in March 2013. (*Id.* at ¶¶ 141-42). Simpson also seeks relief under the Rehabilitation Act, alleging he was on the

employment register for all of the defendant entities and that although they were hiring and were aware of him as a candidate, the defendant entities engaged in discrimination and retaliation by refusing to make him aware when they were hiring or to consider him for open positions.  (Doc. 32 at ¶¶ 43-45; 49; 61-65; 81-82; 93; 98; 106-09; 151-56; 168; 169).  A reasonable reading of the complaint construes these allegations, leveled against all DHR entity defendants, to include the period after the filing of Simpson's 2012 complaint.  These facts could have been, but were not, added to the earlier suit while it was pending.

*Pleming* makes clear that it was within Simpson's discretion to decline to add his 2013 claims to the pending 2012 lawsuit.  Having declined to do so, he has the right to bring a subsequent action based on claims that accrued after the filing of his earlier suit.  Therefore, Simpson's claims accruing after July 16, 2012 – *i.e.*, his claims stemming from any retaliation or discrimination which occurred after that date against the DHR entity defendants, as well as his claims against Denise Raines and Jane Bonds – are not due to be dismissed on *res judicata* grounds and are subjected to further analysis below.

Any claims which had accrued by the time Simpson filed his July 16, 2012 complaint should have been included in it, and to the extent Simpson declined to include them, they were waived.  In the present suit, he alleges he was discriminated against by St. Clair DHR in 2012 – again referring to his 2012 interview for a position with that agency.  His amended complaint has included more specific allegations against Cherri Pilkington in her individual capacity, but they all pertain to her role in the hiring process leading up to the July 2012 rejection letter Simpson received.  As explained above, those claims against St. Clair DHR and Cherri Pilkington are due to be dismissed.  There are no allegations against defendant Pilkington except those which existed at the time of Simpson's 2012 complaint.  Accordingly, defendant Pilkington is due to be

dismissed.  For the reasons that follow, St. Clair DHR will be dismissed as well.  Going forward, Simpson is limited to seeking relief only upon a showing of retaliation or discrimination which occurred after July 16, 2012.

### 2.  Collateral Estoppel

The defendants argue that, as an alternative to *res judicata,* collateral estoppel should also bar Simpson's claims.  (Doc. 35 at 29-30).  They cite the *Pleming* case and correctly point out that it is proper for a court to grant collateral estoppel when: (1) the issue at stake is identical to the issue raised in prior proceedings; (2) the issue was actually litigated in the prior proceedings; (3) the determination of the issue in the prior proceeding was "critical and necessary" for the judgment in the prior action; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior litigation.  142 F.3d at 1359.  However, in discussing the second prerequisite for collateral estoppel (actual litigation), the defendants refer only to the claims that were dismissed on summary judgment in a previous lawsuit.  They do not specify which lawsuit they are pointing to, although it makes no difference.  The defendants make no assertion that Simpson's current claims were – or even could have been – raised in his 2012 lawsuit or elsewhere.  Seeing no reason why collateral estoppel should be available to the defendants as a shield against claims which accrued after Simpson's 2012 lawsuit was filed, the court declines to apply it in this case.

### B.  Race Discrimination Claims

Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens . . . ."  § 1981(a).  It prohibits

"intentional race discrimination in the making and enforcement of public and private contracts, including employment contracts." *Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 471 (11th Cir. 1999). Section 1983, which prohibits the deprivation of a federal right by a "person acting under color of state law," *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001), provides the sole cause of action against state actors for violations of § 1981, *Butts v. County of Volusia*, 222 F.3d 891, 892 (11th Cir. 2000). Finally, the Fourteenth Amendment's Equal Protection Clause prohibits intentional race discrimination in public employment. *Bush v. Houston Cty. Comm'n*, 414 Fed. Appx. 264, 266 (11th Cir. 2011) (citing *Williams v. Consol. City of Jacksonville*, 341 F.3d 1261, 1269 (11th Cir. 2003); *Cross v. State of Alabama, State Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1507 (11th Cir. 1995)). Section 1983 provides a cause of action for a Fourteenth Amendment violation. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994) (noting § 1983 provides method for vindicating infringement of constitutional right). In the employment context, race discrimination claims under Title VII, § 1981, and § 1983 require the same elements of proof. *Bush*, 414 Fed. Appx. at 266 (citing *Rice-Lamar v. City of Ft. Lauderdale, Florida*, 232 F.3d 836, 843 n.11 (11th Cir. 2000)). However, Title VII, § 1981, and § 1983 do not have the same administrative prerequisites, provide relief against the same individuals and entities, or implicate the same immunities.

    1. <u>Title VII Claims</u>

       a. Individual Defendants

    " 'The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the [Civil Rights Act of 1964].'" *Hinson v. Clinch County, Georgia Bd. of Educ.*, 231 F.3d 821, 827 (11th Cir. 2000) (quoting *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991)); s*ee also Dearth v. Collins*, 441 F.3d 931, 933

(11th Cir. 2006).  "Individual capacity suits under Title VII are [] inappropriate."  *Busby*, 931 F.2d at 772.  Accordingly, Simpson's remaining claims against Raines and Bonds in their individual capacities are due to be dismissed.

Title VII claims may be asserted against individual employees in their official capacities. *Cross*, 49 F.3d at 1504.  However, when those claims are also asserted against the employer, the claims against the individual employees in their official capacities, which essentially are claims against the employer, are redundant.  *See Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985) (holding "[o]fficial-capacity suits represent [] only another way of pleading an action against an entity of which an officer is an agent" (internal quotation marks omitted)); *see also Strickland v. Bd. of Tr. of Univ. of Alabama*, 2014 WL 6749019, at *3 (N.D. Ala. Dec. 1, 2014).  Because Simpson asserts Title VII race discrimination and retaliation claims against the individual defendants in their official capacities and against the DHR entities that employ them (*i.e.*, Alabama DHR and DeKalb DHR), the Title VII claims against Raines and Bonds are due to be dismissed.

### b. DHR Entity Defendants

The discriminatory conduct of which Simpson complains is the DHR entity defendants' failure to hire him for a social worker position.

> In a traditional failure-to-hire case, the plaintiff establishes a prima facie case by demonstrating that: (1) [he] was a member of a protected class; (2) [he] applied and was qualified for a position for which the employer was accepting applications; (3) despite [his] qualifications, [he] was not hired; and (4) the position remained open or was filled by another person outside of [his] protected class.

*E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1273 (11th Cir. 2002).  Simpson alleges he is Native American and, therefore, a member of a protected class.  (Doc. 32 at ¶ 8).  He further

alleges he has been on the register of persons eligible to be hired by the defendants since October 7, 2011, and believes the defendants were hiring during the two years preceding his commencement of this action.  (*Id.* at ¶¶ 37-38, 44).

### i.    *DeKalb DHR and Alabama DHR*

Simpson alleges he applied and interviewed for a social worker position with DeKalb DHR in January 2013, but was not hired.  (*Id.* at ¶¶ 50-51).  Based upon this conduct, Simpson filed timely EEOC charges against these defendants on February 4, 2013, and March 6, 2013. (Doc. 32 at 27-30).  He was issued right-to-sue letters on May 9, 2013, and therefore, these claims have been timely filed after Simpson exhausted his administrative remedies.  (*Id.*).

A liberal reading of the complaint suggests Simpson believes the person selected for the position is white and that the defendants have interviewed and hired other white social workers in the two years prior to the commencement of this action.  (*See id.* at ¶¶ 71, 75).  Although the defendants argue Simpson fails to allege how he was treated differently than a person outside his protected class (Doc. 35 at 21), the allegation that the defendants hired white social workers rather than Simpson, a Native American, clearly identifies how Simpson believes the defendants treated him differently.  The defendants also argue Simpson fails to identify a valid comparator. (*Id.* at 23).  However, "a failure to identify specific comparators in a[n] [employment discrimination] complaint does not necessarily mean it should be dismissed."  *Baker v. Hafez Corp.*, 2014 WL 1760976, at *9 n.13 (S.D. Ala. May 2, 2014) (collecting authority).  At this stage of the litigation, Simpson's allegation the defendants have hired white social workers, rather than him, is sufficient.

ii.   *St. Clair DHR*

Simpson attempts to state a claim under Title VII against St. Clair DHR.  (Doc. 32 at ¶¶ 26, 116-37; 149-50; 157; 161-65).  As noted above, many of Simpson's claims against St. Clair DHR are barred by *res judicata*.  Beyond that, St. Clair DHR's employment of a white social worker rather that Simpson in June or July of 2012 is not actionable under Title VII as a discrete act of racial discrimination because it is time-barred.  Before bringing suit under Title VII, a potential plaintiff must exhaust his administrative remedies.  *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314 (11th Cir. 2001).  A potential plaintiff begins the process of exhausting his administrative remedies by timely filing a charge of discrimination with the EEOC.  *Id.*  He must file the EEOC charge within 180 days of the alleged discrimination.  42 U.S.C. § 2000e-5(e)(1).  Failure to file a timely EEOC charge results in a bar of the claims contained in the untimely charge.  *Jordan v. City of Montgomery*, 283 Fed. Appx. 766, 767 (11th Cir. 2008) (citing *Alexander v. Fulton County, Georgia*, 207 F.3d 1303, 1332 (11th Cir. 2003)).  Simpson filed an EEOC charge in March 2013, regarding alleged discrimination that occurred more than 180 days earlier, in June or July of 2012.  Therefore, the EEOC charge was untimely.

The undersigned notes that, in fact, the untimeliness of the charge was the reason the EEOC dismissed it.  Attached to the defendants' motion to dismiss is the EEOC's notice to Simpson it was dismissing the charge as untimely.  (Doc. 35-1 at 4).  Simpson does not dispute the authenticity of the dismissal notice.  *See Chesnut v. Ethan Allen Retail, Inc.*, 971 F. Supp. 2d 1223, 1228 (N.D. Ga. 2013) ("In ruling on a motion to dismiss, the district court may consider an extrinsic document if (1) it is central to the plaintiff's claim, and (2) its authenticity is not challenged.  Further, a document central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided its contents are not in dispute.  In discrimination

15

cases, the EEOC charge is a document courts routinely consider when ruling on motions to dismiss, even if it was not attached to a pleading." (internal quotation marks and citations omitted)).

Accordingly, St. Clair DHR's employment of a white social worker in June or July of 2012 is not actionable under Title VII as a discrete act of racial discrimination.  No other EEOC charge, beyond the one discussed above, has been offered by Simpson to show he has exhausted his administrative remedies with respect to St. Clair DHR.  Therefore, to the extent he may have claims against that entity defendant, he has failed to exhaust them and may not bring them via this action.  This does not require dismissal of St. Clair DHR as a defendant because it appears, as set forth below, that Simpson successfully states a Rehabilitation Act claim against St. Clair DHR.

### iii.     *Jefferson DHR, Marshall DHR, and Etowah DHR*

Simpson attempts to state a claim under Title VII against Jefferson DHR, Marshall DHR, and Etowah DHR.  (Doc. 32 at ¶¶ 17, 20, 23, 37-38, 83-85, 95-97, 98-100, 106-07, 115).  However, Simpson offers no evidence whatsoever that he has exhausted his administrative remedies as to these defendants.  Nor does he state in his pleadings that he has ever made an EEOC complaint regarding any alleged violations of Title VII.  Although Simpson has attached three EEOC charges to his complaint, (*Id.* at pp. 27-31), none of them concern these entity defendants.  Thus, Simpson has failed to establish administrative exhaustion with respect to these claims. Therefore, they are due to be dismissed.

2. § 1981 & Fourteenth Amendment Claims Asserted Through § 1983

a. DHR Entity Defendants & Individual Defendants Sued in Official
Capacities

Although § 1983 provides the cause of action for a violation of § 1981 by a "person acting under color of state law," state agencies and state officials sued in their official capacity for damages are not "person[s]" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64, 71 (1989). Alabama DHR is a state agency, as is each of its county departments. *See* Ala. Code §§ 38-2-1 (creating state department of human resources); 38-2-8 (creating county departments of human resources). Therefore, the DHR entity defendants are not "person[s]" subject to suit under § 1983. *See A.D. ex rel. McGhee v. Alabama Dep't of Human Res.*, 995 F. Supp. 2d 1253, 1269 (N.D. Ala. 2014) (holding Alabama DHR and Jefferson DHR are state agencies and, thus, not "person[s]" subject to suit under § 1983). Raines and Bonds, who direct or supervise DeKalb DHR, are not "person[s]" subject to suit under § 1983 either, to the extent they are sued in their official capacities for money damages.

Moreover, the Eleventh Amendment bars suits for money damages against state agencies and state officials sued in their official capacities unless the state has waived its Eleventh Amendment immunity or Congress has abrogated it. U.S. Const. Amend. XI; *Seminole Tribe of Florida v. State of Florida*, 11 F.3d 1016, 1021 (11th Cir. 1994) (noting exceptions to Eleventh Amendment immunity); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 101, 101 n.11 (1984) (Eleventh Amendment immunity extends to state officials sued in official capacities, provided state is real, substantial party in interest, which is the case where award of damages would be paid by state). The State of Alabama has not waived its Eleventh Amendment immunity. Ala. Const. Art. I, § 14 ("[T]he State of Alabama shall never be made a defendant in any court of law or equity."); *Carr v. City of Florence, Alabama*, 916 F.2d 1521, 1525 (11th Cir.

1990). Nor has Congress abrogated Eleventh Amendment immunity in actions brought pursuant to § 1983. *Carr*, 916 F.2d at 1525 (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979)). Therefore, the Eleventh Amendment bars Simpson's § 1981 and Fourteenth Amendment claims asserted through § 1983 against the DHR entity defendants and against Raines and Bonds, to the extent those individual defendants are sued in their official capacities for money damages.[8]

Another exception to Eleventh Amendment immunity exists under the doctrine announced by the United States Supreme Court in *Ex parte Young*, 209 U.S. 123 (1908). *Florida Ass'n of Rehab. Facilities, Inc., v. State of Florida Dep't of Health and Rehab. Servs.*, 225 F.3d 1208, 1219 (11th Cir. 2000). Under that doctrine, a citizen may sue a state official in her official capacity for prospective injunctive relief to end a continuing violation of federal law. *Id.* In this case, not only does the Eleventh Amendment not bar suit, *id.*, but also the state official is considered a "person" for purposes of § 1983, *Will*, 491 U.S. at 71 n.10.

The Eleventh Circuit has held a request for re-instatement constitutes a request for prospective injunctive relief and, therefore, is not barred by the Eleventh Amendment. *See Cross*, 49 F.3d at 1503 (holding Eleventh Amendment did not bar request for re-instatement) (citing *Lassiter v. Alabama A&M Univ., Bd. of Trs.*, 3 F.3d 1482, 1485 (11th Cir. 1993), *reh'g en banc granted and opinion vacated*, 19 F.3d 1370 (11th Cir. 1994), *on reh'g*, 28 F.3d 1146 (11th Cir. 1994)); s*ee also Poindexter v. Dep't of Human Res.*, 946 F. Supp. 2d 1278, 1290 (M.D. Ala. 2013) (holding plaintiff's request for re-instatement was prospective and equitable and, therefore, not barred by Eleventh Amendment). Simpson's request is for instatement rather than re-instatement. (Doc. 32 at 26). A request for re-instatement implies a challenge to the termination of employment. In this action, Simpson does not challenge the termination of his

---

[8] By contrast, "[it] is undisputed that the Eleventh Amendment does not bar [] Title VII suit[s]." *Cross*, 49 F.3d at 1502.

employment with Marshall DHR in 2004. He challenges his failure to be hired for new positions that have become available in various county departments of human resources and asks for an injunction placing him in one of those positions.

There is little authority addressing whether a request for instatement comes within the *Ex parte Young* exception to Eleventh Amendment immunity. *See Smith v. Sec'y of Dep't of Envtl. Prot. of Pennsylvania*, 540 Fed. Appx. 80, 82 (3rd Cir. 2013) (noting that while there does appear to be agreement that injunctive relief returning a former employee to employment is permissible, whether injunctive relief requiring a plaintiff to be newly hired is a close question to which neither the Supreme Court nor any circuit court has provided a clear answer). The defendants argue generally and with little elaboration that *Ex parte Young* relief is not available against Raines and Bonds because no continuing violation of federal law exists. (Doc. 35 at 14-16). The Eastern District of Pennsylvania rejected a similar argument in *Smith v. Sec'y of Dep't of Envtl. Prot. of Pennsylvania*, reasoning the defendant failed to explain how a failure to hire is any different than the termination of an employee for purposes of determining whether a continuing violation of federal law exists. 2013 WL 6388555, at *3-4 (E.D. Penn. Dec. 5, 2013), *cert. denied*, 134 S. Ct. 1053 (Jan. 27, 2014). The argument presented by the defendants in this case suffers from the same shortcoming. They do not explain how a request for re-instatement comes within the *Ex parte Young* exception, while a request for instatement may not.

Ultimately, in *Smith* the Pennsylvania district court held the plaintiff's failure-to-hire claim could proceed. 2013 WL 6388555, at *5. Because Simpson states plausible Title VII claims against DeKalb DHR and Alabama DHR, he also states plausible § 1981 and Fourteenth Amendment race discrimination claims against the individual defendants in their official capacities through § 1983. *See Bush*, 414 Fed. Appx. at 266 (race discrimination claims under

Title VII, § 1981, and § 1983 require same elements of proof); *Kentucky*, 473 U.S. at 166-67 (official-capacity suits are effectively suits against entity of which official is an agent).   The undersigned finds the reasoning of *Smith* persuasive and, accordingly, concludes Simpson's § 1981 and Fourteenth Amendment claims asserted through § 1983 against Raines and Bonds in their official capacities seeking an order of instatement may proceed to the extent Simpson states a plausible race discrimination claim against these defendants.

b. Individual Defendants Sued in Individual Capacity

The individual defendants sued in their individual capacities are "person[s]" subject to suit under § 1983, and the Eleventh Amendment does not shield them from suit in this capacity. *Hafer v. Melo*, 502 U.S. 21, 31 (1991).   Furthermore, individuals may be sued in their individual capacities and held liable for discrimination under §§ 1981 and 1983, unlike under Title VII. *Hicks v. City of Alabaster, Alabama*, 2013 WL 979070, at *7 (N.D. Ala. Mar. 12, 2013) (citing *Shotz v. City of Plantation, Florida*, 344 F.3d 1161, 1176 (11th Cir. 2003)).   However, "[a] claim for individual liability under Section 1981 requires an affirmative showing linking the individual defendant with the discriminatory action." *Perkins v. Kushla Water Dist.*, 21 F. Supp. 3d 1250, 1261 (S.D. Ala. 2014) (internal quotation marks omitted), *aff'd*, 598 Fed. Appx. 899 (11th Cir. 2015).   "[T]o establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Hafer*, 502 U.S. at 25 (internal quotation marks omitted) (emphasis in original).

In their motion to dismiss, the defendants argue Simpson failed to allege how Raines and Bonds personally participated in the discrimination.   (Doc. 35 at 16). This seemingly ignores Simpson's allegations that Raines conducted his interview for a social worker position with DeKalb DHR in January 2013, Bonds participated in the interview, and Raines sent a letter

informing him he had not been selected for the position.  These allegations give rise to the reasonable inference Raines and Bonds participated in the decision whether to hire Simpson, which connects them to the alleged discrimination.  Accordingly, Simpson states plausible race discrimination claims against Raines and Bonds in their individual capacities through § 1983.

### C.  Rehabilitation Act Claims

The Rehabilitation Act prohibits programs that receive federal funds from discriminating in employment against individuals with disabilities.  *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citing 29 U.S.C. § 794(a)).  It also prohibits retaliation against an employee who has opposed disability discrimination.  *Burgos-Stefanelli v. Sec'y, U.S. Dep't of Homeland Sec.*, 410 Fed. Appx. 243, 245 (11th Cir. 2011) (citing 29 U.S.C. § 794(d)).  The Eleventh Amendment does not immunize state agencies and officials from suit under the Rehabilitation Act.  *Garrett v. Univ. of Alabama at Birmingham*, 344 F.3d 1288, 1293 (11th Cir. 2003).

#### 1. Individual Defendants

Because Simpson's Rehabilitation Act claims against Raines and Bonds in their official capacities are, in effect, claims against the DHR entities of which they are agents, *see Kentucky*, 473 U.S. at 167-68, and because Simpson also has asserted Rehabilitation Act claims against those entities (*i.e.*, Alabama DHR and DeKalb DHR), his claims against the individuals in their official capacities are duplicative and due to be dismissed, *see Ginwright v. Dep't of Revenue for Alabama*, 2013 WL 1187943, at *3-4 (M.D. Ala. Mar. 21, 2013) (dismissing official capacity Rehabilitation Act claims against individual defendants because plaintiff also asserted Rehabilitation Act claims against entity of which those defendants were agents).  Moreover, Simpson's Rehabilitation Act claims against Raines and Bonds in their individual capacities are due to be dismissed because the Rehabilitation Act does not provide a cause of action against

persons sued in their individual capacities. *See Berkery v. Kaplan*, 518 Fed. Appx. 813, 814-15 (11th Cir. 2013) (Rehabilitation Act does not provide for individual liability); *Pritchard v. Southern Co. Servs.*, 102 F.3d 1118, 1119 n.7 (11th Cir. 1996) (remedy for any discrimination plaintiff may have suffered because of disability lies against employer, not individual officers of employer); *Simpson v. Alabama Dep't of Human Res.*, 2012 WL 5873553, at *3, (N.D. Ala. Nov. 16, 2012) (dismissing Simpson's individual capacity Rehabilitation Act claims).

2. <u>DHR Entity Defendants</u>

a. Disability Discrimination

"The elements of a Rehabilitation Act [disability discrimination] claim are that: (1) 'an individual has a disability;' (2) 'the individual is otherwise qualified for the position;' and (3) 'the individual was subjected to unlawful discrimination as the result of his disability.'" *Curry v. Sec'y, Dep't of Veterans Affairs*, 518 Fed. Appx. 957, 963 (11th Cir. 2013) (quoting *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000)). Simpson alleges has bi-polar and attention deficit disorders and a learning disability (Doc. 32 at ¶ 8), thereby sufficiently pleading the first element of a disability discrimination claim under the Rehabilitation Act. He further alleges his degree and training qualified him for a social worker position with the DHR entity defendants (Doc. 32 at ¶¶ 34, 40) and, thus, sufficiently pleads the second element. Finally, he alleges the DHR entity defendants have knowledge of his disabilities and have not hired him because of his disabilities. (Doc. 32 at ¶¶ 151-56). Construing Simpson's pleadings liberally, as the court must, the undersigned finds Simpson has sufficiently plead causation with respect to Alabama DHR and DeKalb DHR. Simpson alleges he interviewed with Denise Raines for a job at DeKalb DHR in January 2013. (*Id.* at ¶¶ 50, 52). Raines was aware of an earlier lawsuit Simpson filed in which he alleged disability discrimination; during that lawsuit she gave a deposition. (*Id.* at ¶

22

53).  During his interview, Raines mocked Simpson by making a reference to that deposition, and at the end of his interview, Simpson pointed out to Raines that he was disqualified from being able to do a field placement because of his disability.  (*Id.* at ¶ 55).  Simpson's having failed to do a field placement has been used as a strike against him in hiring decisions, and indeed when his rejection letter came, it contained what Simpson alleges were mocking references to his disability and his earlier attempts to assert his right to be treated equally in spite of them.  (*Id.* at ¶¶ 57-59).  Thus, Simpson's pleading of discrimination is adequate to give Alabama DHR, DeKalb DHR, and Raines notice of the accusations against them under the Rehabilitation Act.  In other words, Simpson "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

As to the remaining entity defendants, the undersigned concludes Simpson has failed to sufficiently plead causation.  Simpson fails to offer any facts whatsoever which would support an inference that the remaining defendants' actions were causally connected to Simpson's disabilities.  In fact, Simpson has only very generally pleaded that the remaining defendants were hiring at all during the relevant time period or that Simpson applied for an open position and was denied.  Aside from his application with DeKalb DHR in January 2013 and his application with St. Clair DHR (which, as discussed above, is procedurally barred), Simpson offers no details at all about any open positions he applied for, dates during which the defendants were hiring for open positions, or any information which would establish a causal connection between Simpson's disability and any action taken by the remaining defendants.  Thus, Simpson fails to state a Rehabilitation Act claim against Marshall DHR, Jefferson DHR, Etowah DHR, and St.

Clair DHR.  Accordingly, the undersigned recommends Simpson's Rehabilitation Act claims be dismissed as to all entity defendants except Alabama DHR and DeKalb DHR.

   b. Retaliation

To establish a prima facie case of retaliation under the Rehabilitation Act, a plaintiff must show that: "(1) [he] engaged in statutorily protected expression; (2) [he] suffered a materially adverse employment action; and (3) there was some causal relationship between the two events." *Burgos-Stefanelli*, 410 Fed. Appx. at 246 (citing *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008)).  "Statutorily protected expression includes . . . participating in discrimination-based lawsuits."  *Laosebikan v. Coca-Cola Co.*, 167 Fed. Appx. 758, 764 (11th Cir. 2006) (citing *Pipkins v. City of Temple Terrance, Florida*, 267 F.3d 1197, 1201 (11th Cir. 2001)).  By alleging he previously has sued Alabama DHR and various of its county departments for disability discrimination and retaliation (Doc. 32 at ¶ 8), Simpson sufficiently pleads the first element of a retaliation claim.

 "A materially adverse action is one that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  *Shannon v. Postmaster Gen. of U.S. Postal Serv.*, 335 Fed. Appx. 21, 26 (11th Cir. 2009) (quoting *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).  The defendants argue Simpson has failed to identify a materially adverse action Etowah DHR took against him because he does not allege he interviewed for a social worker position with Etowah DHR during the time period in question or that Etowah DHR even had an open social worker position during that time period.  (Doc. 35 at 24-27).  The defendants also note Simpson does not allege he received a notice from Etowah DHR that he was not selected for an open position or that Etowah DHR hired someone other

than himself.  (*Id.* at 27).  This argument extends to the DHR entities whose hiring in 2013 and beyond is lacking in the same level of detail in Simpson's complaint.

Even so, Simpson alleges he has been on a register of persons eligible to be hired as a social worker by all of the county departments of Alabama DHR since October 7, 2011, and believes all of the DHR entity defendants were hiring during the two years preceding his commencement of this action.  (Doc. 32 at ¶¶ 153-156).  At this stage of the litigation, these allegations are sufficient to give rise to the inferences that the DHR entity defendants hired individuals other than Simpson for social worker positions during the time period in question and that Simpson was not hired because of his disability and in retaliation for his lawsuits.  In two of Simpson's prior lawsuits, this court has held that knowing he would not be interviewed or hired for a position because he brought a lawsuit alleging disability discrimination might dissuade a reasonable employee from pursuing the lawsuit.  *See Simpson*, No. 10-3084 at Doc. 26, p. 13 (permitting Simpson's Rehabilitation Act retaliation claim to proceed past Rule 12(b)(6) stage as to certain DHR entity defendants); *Simpson*, No. 12-2467 at Doc. 17, pp. 6-7 (permitting Simpson's Rehabilitation Act retaliation claim to proceed past Rule 12(b)(6) stage as to all DHR entity defendants).  Accordingly, Simpson sufficiently pleads the second element of a retaliation claim.

Finally, "[t]o establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct and that the protected activity and the adverse action were not wholly unrelated."  *Burgos v. Chertoff*, 274 Fed. Appx. 839, 843 (11th Cir. 2008) (quoting *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000)).  Simpson alleges the decision-makers for the DHR entity defendants knew of his prior lawsuits.  (Doc. 32 at ¶ 8, 153-56).

Even if the decision-makers for DeKalb DHR knew of Simpson's November 2006 lawsuit against DeKalb DHR, and even if the decision-makers for Etowah DHR knew of Simpson's 2010 lawsuit against the director of Etowah DHR, those lawsuits are too remote in time to establish a causal connection between the lawsuits and any adverse action taken against Simpson during the time period in question.   To establish a causal connection between protected activity and an adverse employment action, the temporal proximity between the two must be very close.  *See Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004).  Courts have held a three-to-four month disparity is insufficient to establish a causal connection.  *See id.* (citing *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).  But with respect to DeKalb DHR and Alabama DHR, Simpson alleges more than just a temporal connection because he describes conversations and interactions which, if true, would tend to show a causal link between Simpson's previous lawsuits and DHR's adverse hiring decisions.   Accordingly, Simpson sufficiently pleads the third element of a retaliation claim with respect to Alabama DHR and DeKalb DHR on the basis of his interview with Denise Raines and Jane Bonds.[9]

Simpson also alleges his 2012 lawsuit constitutes protected activity of which the decision-makers for each of the DHR entity defendants were aware.  (Doc. 32 at ¶¶ 27, 52).  Thus, Simpson's complaint could reasonably be construed to complain of materially adverse action taken by DHR within three or four months of his commencement of a lawsuit in July 2012.  If Simpson offered enough to permit an inference he was referring to a materially adverse

---

[9] The defendants assert, with little analysis or argument, that Simpson's Rehabilitation Act retaliation claim against Etowah County is time-barred.  "For Rehabilitation Act claims originating in Alabama, that state's two-year period for personal injury actions, found in Ala. Code § 6-2-38(l), supplies the applicable statute of limitations."  *Simpson*, 501 Fed. Appx. at 953-54 (citing *Jones v. Preuit & Mauldin*, 876 F.2d 1480, 1483 (11th Cir. 1989)).  As to Etowah County DHR, the discriminatory conduct of which Simpson complains is that entity's failure to interview him for a social worker position in the two years preceding his commencement of this action.  Accordingly, it is not time-barred.

action taken in the three to four months following the filing of his July 2012 lawsuit, then temporal proximity could establish the causation element for those claims. But the undersigned does not find Simpson's pleading sufficient in this regard. Simply put, the court would have to speculate that Simpson is complaining of some alleged (but not specifically pleaded) hiring decision which took place in the narrow time period following his July 2012 lawsuit. The court would also have to speculate that, if it happened, such a decision was causally connected to Simpson's protected activity based on temporal proximity alone. There is not enough information in the complaint to satisfy the *Iqbal* standard with respect to the remaining entity defendants and, as such, the undersigned recommends Simpson's Rehabilitation Act claims against Marshall DHR, Jefferson DHR, and Etowah DHR be dismissed for failure to state a claim upon which relief can be granted. With respect to St. Clair DHR, Simpson states only those allegations which, as explained above, are procedurally barred. Because he offers no allegations beyond those, the undersigned recommends Simpson's Rehabilitation Act claims against St. Clair DHR be dismissed as well.

### D. <u>Breach Of Written Agreement</u>

Finally, Simpson asserts a claim for "breach of written agreement." (Doc. 32 at 25). His entire statement in support of this claim is that he is protected by the Rehabilitation Act, "has correspond[ence] from the defendants that those conditions would be met," and his claims, if true, "would show a breach" in that correspondence. (*Id.* at ¶¶ 173-75). This count does not state a claim. To the extent Simpson asserts a Rehabilitation Act claim through this count, it is addressed above. To the extent he seeks to assert a claim for breach of contract or some other promise, the allegations do not support anything more than "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. There are no allegations of the traditional

contractual elements (offer, acceptance, agreement, consideration) nor is there any reference to specific conduct of the defendants which, if proven, would evidence the breach of an enforceable promise. Accordingly, this claim is due to be dismissed.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the defendants' motion to dismiss (Doc. 35) is **GRANTED** in part and **DENIED** in part:

The motion is **DENIED** as to Simpson's Title VII race discrimination claims against Alabama DHR and DeKalb DHR; Rehabilitation Act claims for discrimination and relation against Alabama DHR and DeKalb DHR; race discrimination claims asserted through § 1983 against Raines and Bonds in their official capacities for prospective injunctive relief; and race discrimination claims asserted through § 1983 against Raines and Bonds in their individual capacities. Simpson is permitted to proceed on those claims.

The motion is **GRANTED** to the extent that any claims which had accrued as of July 16, 2012, are **DISMISSED** as procedurally barred, including all claims against defendant Pilkington. The motion is **GRANTED** with respect to all Rehabilitation Act claims and Title VII claims against Jefferson DHR, Marshall DHR, Etowah DHR, and St. Clair DHR. Simpson's Title VII race discrimination claims and Rehabilitation Act disability discrimination and retaliation claims against Raines and Bonds in their official capacities are **DISMISSED** as redundant; and Simpson's Title VII race discrimination claims and Rehabilitation Act disability discrimination and retaliation claims against those individuals in their individual capacities are **DISMISSED** as non-cognizable, all pursuant to Rule 12(b)(6). The motion is **GRANTED** to the extent Simpson's race discrimination claims asserted through § 1983 against the DHR entity defendants and against Raines and Bonds in their official capacities for money damages are **DISMISSED**

pursuant to Rule 12(b)(6) because those defendants are not "person[s]" subject to suit under §
1983 and pursuant to Rule 12(b)(1) as barred by the Eleventh Amendment.   The motion is
**GRANTED** to the extent Simpson's race discrimination claims asserted through § 1983 against
Pilkington in her individual capacity are **DISMISSED** pursuant to Rule 12(b)(6).   Finally, the
the motion is **GRANTED** to the extent Simpson's claim for breach of written agreement are
**DISMISSED** pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be
granted.

     **DONE** this 8th day of February, 2017.

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE